STATE

v.

Luis PINEDA.

No. 97–282–M.P.

Supreme Court of Rhode Island.

April 21, 1998.

Annie Goldberg, Aaron L. Weisman, Providence, for Plaintiff.

Andrew Horwitz, Bristol, David S. Slepkow, for Defendant.

Before WEISBERGER C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case is before the court on the petition of Luis Pineda (Pineda) for certiorari. Pineda seeks review of a decision of an Appeals Panel (appeals panel) of the Administrative Adjudication Court (AAC) in which the court affirmed the decision of the administrative judge's finding that Pineda had refused to submit to a chemical test in violation of G.L. 1956 § 31–27–2.1. Pineda asserts several points of error with respect to the decision and urges this court to reverse the appeals panel. For the reasons set forth below, we deny Pineda's petition and affirm the holding of the appeals panel. The facts

insofar as are pertinent to this petition are as follows.[1]

On September 27, 1996, a Pawtucket police officer, traveling in a marked police cruiser on Lonsdale Avenue in Pawtucket, Rhode Island, heard what he believed was a car running on a flat tire. The automobile, which was in fact operating on a blown tire and was being driven by Pineda, passed the officer's car, nearly hitting it as it went by. Accordingly the officer stopped the motor vehicle and subsequently asked Pineda for his license and registration. While waiting for Pineda to produce the requested materials, the officer detected an odor of alcohol emanating from him and noticed his bloodshot eyes. The officer ultimately requested that Pineda step out of the vehicle, and upon doing so, Pineda stumbled and fell against his car. He then proceeded to fail the field sobriety tests administered by the officer. As a result the officer advised Pineda of his rights from the Rights for Use at the Scene form, placed him in custody, and took him to the station for processing.

While enroute to the station, Pineda fell asleep in the rear of the police cruiser. Upon arriving at the station, Pineda was awakened, removed from the vehicle, and transported into the police station where he continued to have difficulty staying awake. The officer then read the Rights for Use at the Station form to Pineda, who was unable or unwilling to sign it. Thereafter, Pineda agreed to submit to a chemical breath test. Pineda did not, however, successfully complete the test, failing to provide a sufficient breath sample after two attempts to do so. On the basis of his inability to submit an adequate breath sample, Pineda was charged with refusal to submit to a chemical test in violation of § 31–27–2.1. He was also

charged with driving under the influence of liquor in violation of § 31–27–2.

The driving under the influence charge was tried in Sixth Division District Court. Although no record of this proceeding has been submitted for review, Pineda places great reliance on the outcome of this trial. Apparently a judgment of acquittal entered at the conclusion of the case, based upon the failure of the prosecution to establish its compliance with § 31–27–3. This section affords a person arrested and charged with operating a motor vehicle while under the influence of drugs or alcohol the right to be examined at his or her own expense by a physician selected by that person and requires the arresting officer "immediately [to] inform the person of this right and afford the person a reasonable *opportunity to exercise the same.*" *Id.* At the individual's subsequent trial on the driving under the influence charge, the prosecution must prove that the accused "was so informed and was afforded that opportunity." *Id.* In this case, the only evidence of said finding, however, consists of an undated order entitled "Findings of Fact" that Pineda has filed with this court. This order reads in its entirety as follows:

> "After a full trial on the merits in this case, the Court finds that the state failed to establish its compliance with section 31–27–3 of the Rhode Island General Laws *for the purposes of this trial.* For that reason the court granted [*sic*] the Defendant's motion for a judgment of acquittal [*sic*]." (Emphasis added.)

Subsequently, on January 13, 1997, a hearing was held at the AAC on the charge of refusal to submit to a chemical test. At such a hearing the state must once again demonstrate its compliance with § 31–27–3 in order to sustain a finding under § 31–27–2.1.[2]

---

1. The factual assertions set forth in the instant case are derived from a brief summary provided in the AAC appeals panel decision and portions of a transcript prepared by Pineda in conjunction with his petition. No official transcripts have been filed with this court.

2. General Laws 1956 § 31–27–2.1, "Refusal to submit to chemical test," states in pertinent part:

> "(b) Upon suspending or refusing to issue a license or permit [for refusing to submit to a chemical test] as provided in subsection (a) of

this section, the administrative adjudication court * * * shall afford the person an opportunity for a hearing as early as practical upon receipt of a request in writing. * * * If the administrative judge finds after the hearing that the law enforcement officer making the sworn report had reasonable grounds to believe that the arrested person had been driving a motor vehicle within this state while under the influence of intoxicating liquor, toluene, or any controlled substance, as defined in chapter 28 of title 21, or any combination thereof, and

Therefore, Pineda sought a pretrial ruling that the state be collaterally estopped from relitigating its compliance with § 31–27–3, ostensibly on the basis of the so-called "Findings of Fact." Pineda argued that the state had a full and fair opportunity to litigate this issue at the criminal trial in the District Court and that both the state and the AAC judge were bound by this determination. The administrative judge denied the motion and proceeded to conduct a hearing on the merits, at the conclusion of which he sustained the refusal charge.

Pineda appealed both the prehearing ruling on the estoppel issue and the decision on the merits to an appeals panel of the AAC. In a written decision the appeals panel affirmed the administrative judge on all issues. Pineda then petitioned this court for a writ of certiorari, which we granted.

In his petition Pineda asserts several points of error, claiming (1) that the evidence produced at the hearing demonstrates that Pineda did submit to the breathalyzer tests because the breathalyzer printouts, which read "deficient sample," are in and of themselves insufficient to prove that Pineda did not submit to the test, (2) that Pineda was not fully informed of his rights because he was asleep at the time the rights were administered to him, and (3) that the state was collaterally estopped from relitigating its compliance with § 31–27–3 because the issue had previously been decided in the Sixth Division District Court.

We are cognizant of the fact that issues raised by Pineda in this petition are matters of great import that have yet to be addressed by this court. Specifically the issue of the conduct necessary to sustain a refusal charge pursuant to § 31–27–2.1—where the defen-

dant allegedly submits to the test but fails to produce a sufficient breath sample for adequate testing—is one of first impression. Likewise, the question of the applicability of the doctrine of collateral estoppel in refusal hearings at the AAC in the face of a failure of proof on a condition precedent in a like proceeding in the District Court is an important issue in need of clarification.[3] Nevertheless, a majority of the justices of this court decline to reach these important questions on the basis of the record before us. We conclude that the record on appeal is devoid of the requisite findings and the evidentiary rulings of both the AAC judge and the District Court judge so as to preclude any meaningful review of the issues raised in this petition. To attempt to resolve these important questions on the state of the record before us would require inference and supposition.

■ Rule 10(b)(1) of the Supreme Court Rules of Procedure provides that within ten days after filing the notice of the appeal the appellant

"shall order from the reporter a transcript of such parts of the proceedings not already on file as the appellant deems necessary for inclusion in the record. Unless the entire transcript is to be included, the appellant shall, within the time above provided, file and serve on the appellee a description of the parts of the transcript which the appellant intends to include in the record and a statement of the specific points upon which he or she intends to rely on the appeal. If the appellee deems a transcript of other parts of the proceedings to be necessary the appellee shall immediately order such parts from the reporter or procure an order from the trial court re-

that the person while under arrest refused to submit to the tests upon the request of a law enforcement officer, *that the person had been informed of his or her rights in accordance with § 31–27–3*, and that the person had been informed of the penalties incurred as a result of noncompliance with this section, the administrative judge shall sustain the violation." (Emphasis added.)

3. We note that our concurring colleagues consider compliance with § 31–27–3 to be an element of the offense that must be established to the satisfaction of the finder of fact beyond a reason-

able doubt, rather than a condition precedent to be determined by the trial justice. We are aware that in *State v. Langella*, 650 A.2d 478 (R.I.1994), we declined to address the question of whether by including the identical language in § 31–27–2(c)(6) the Legislature intended that § 31–27–3 be subsumed into the later enacted statute. Although we concluded that the trial justice was not in error by declining to submit the question to the jury, we are nonetheless satisfied that neither issue is properly before the court at this time and leave its resolution for another day.

quiring appellant to do so. The ordering and payment of the copies of the transcript shall be in accordance with the rules of the trial court."

This court has previously stated that the failure to comply with this requirement may result in a dismissal of the appeal. *See In re Kimberly and James*, 583 A.2d 877, 879 (R.I. 1990) (failure to order a transcript precludes meaningful review by the court); *State v. Jennings*, 117 R.I. 291, 294, 366 A.2d 543, 545 (1976) (party seeking court's review must provide so much of the record as required to allow court to pass upon alleged error, otherwise court must affirm trial judge's holdings).

The only record submitted to this court by Pineda consists of a transcript of the hearing at the AAC, which he prepared. There is no stenographic record of the District Court proceedings and the "Findings of Fact" statement prepared by Pineda and signed by the trial judge is wholly inadequate. This order merely states that the court found that the state failed to establish its compliance with § 31–27–3 *for purposes of that trial* and therefore granted the defendant's motion for judgment of acquittal. More importantly we are without a transcript of the pretrial hearing before the AAC judge on Pineda's motion to estop the state from relitigating its compliance with § 31–27–3. Thus we have absolutely no way of reviewing the decision of the hearing judge with respect to this issue. On the state of the record before us, we therefore have no alternative but to dismiss the petition and affirm the decision of the appeals panel.

Even were we to overlook the glaring defects in this record and assent to an analysis of the issues raised by Pineda, his petition suffers from other procedural infirmities that preclude our review of the case. Pineda's first two arguments, that there was insufficient evidence to demonstrate a refusal and that he was not adequately informed of his rights because he was asleep at the time they were being administered, are based on various constitutional and policy arguments that simply were not developed or preserved at the trial level.

■ It is well settled that this court will not review issues that were not preserved for appeal by a specific objection at trial. *See State v. Snow*, 670 A.2d 239 (R.I.1996). Similarly a motion is required to preserve the issue of sufficiency of the evidence. *See State v. Williams*, 656 A.2d 975 (R.I.1995). At the hearing before the administrative judge, the only areas defense counsel focused on or argued were that Pineda did not understand his rights because they were given in English and not in Spanish, and that Pineda had in fact submitted to a test because he blew into the machine two times. Defense counsel never questioned the officer about whether Pineda was awake or even conscious while he was being informed of his rights. Likewise he never asked the arresting officer about the integrity of the breathalyzer machine or his required certification to operate it. All these issues are being raised for the first time on appeal. Furthermore, at no time did Pineda's counsel move to dismiss the violation because the breathalyzer printout, which read "deficient sample," was insufficient to prove a failure to submit to chemical analysis or because the state failed to prove that Pineda was fully apprised of his rights. It is our conclusion that the raising of these issues on appeal is the product of postverdict attention as opposed to pretrial preparation. Therefore, upon the basis of the above referenced principles, we determine that appellate review of these issues would be inappropriate.

■ Similarly we are precluded from passing on Pineda's final argument, that the state was collaterally estopped from relitigating its compliance with § 31–27–3, because the basis upon which this argument rests, the Findings of Fact made during a hearing on a motion for a judgment of acquittal in a nonjury trial, is a legal nullity. In *State v. McKone*, 673 A.2d 1068 (R.I.1996), this court undertook an extensive analysis of a motion for judgment of acquittal versus a motion to dismiss. "Our long established trial procedure practice has been, and remains, that in jury-waived trials in this state, the appropriate motion by which a defendant may challenge the legal sufficiency of the state's trial evidence at the close of the state's case is by motion to dismiss." *Id.* at 1072. "The trial justice's obligations triggered by a motion for judg-

ment of acquittal in a criminal *jury trial* case and by a motion to dismiss in a *nonjury* criminal trial are totally different from each other in both form and effect." *Id.*

"In a criminal jury trial setting, the motion for judgment of acquittal, as did the former motion for directed verdict, requires the trial justice to view and evaluate the nonmoving party's evidence in a light most favorable to the nonmoving party and against the moving party. On such a motion, the trial justice is not permitted to weigh the trial evidence or to pass upon the credibility of witnesses. Additionally the trial justice draws from the trial evidence all inferences favoring the nonmoving party and against the moving party. *State v. Harnois,* 638 A.2d 532, 536 (R.I. 1994); *State v. Clark,* 603 A.2d 1094, 1097–98 (R.I.1992); *State v. Lamoureux,* 573 A.2d 1176, 1180–81 (R.I.1990). After doing all that, the trial justice is then only required to determine whether reasonable minds in a *jury* might conclude and decide the case issue or issues in favor of the nonmoving party. If the trial justice concludes that a jury might reasonably so find in favor of the nonmoving party, he or she is then required to deny the motion for judgment of acquittal and permit the case to go to the jury.

"In a case tried *without a jury,* a totally different rule of review on the appropriate motion to dismiss comes into play. The trial justice, in ruling upon that motion, acts as the factfinder. In that role, when passing upon the motion to dismiss, he or she is required to weigh and evaluate the trial evidence, pass upon the credibility of the trial witnesses, and engage in the inferential process, impartially, not being required to view the inferences in favor of the nonmoving party, and against the moving party. After so doing, if the trial justice in a criminal case setting concludes that the trial evidence is sufficient to establish guilt beyond a reasonable doubt, he or she denies the defendant's motion to dismiss and, if both sides have rested, enters decision and judgment of conviction thereon. If the evidence is not so sufficient, he or she grants the motion and dismisses the case." *McKone,* 673 A.2d at 1072–73.

The *McKone* court determined that the wrong motion had been presented but nonetheless conducted a review of the record, assuming the motion to have been proper, in order to determine whether the trial justice made an error in disposing of the case. Unfortunately we have no such record to review since we do not have a transcript of the District Court proceedings. Moreover, in *McKone* we stated that *"[h]enceforth, motions for judgment of acquittal in jury-waived criminal trials will be considered legal nullities* and be subject to summary dismissal by the trial justice." *Id.* at 1073. (Emphasis added.) Therefore, by virtue of Pineda's failure to bring the appropriate motion, the District Court decision has no legal effect and cannot serve as a final judgment for collateral estoppel purposes.

Moreover, this court has previously stated that a party seeking to invoke the doctrine of collateral estoppel bears the burden of demonstrating that a specific finding of fact was made on a material matter that was fully litigated at the prior proceeding. "A general finding will not suffice, nor will a specific finding that was not fully litigated unless the state had notice that the issue was to be litigated fully at the hearing and had a fair opportunity to do so." *State v. Chase,* 588 A.2d 120, 123 (R.I.1991). The order containing the findings of fact relied upon by Pineda is wholly inadequate and fails to sustain his burden of proof on this issue. These blatant errors, combined with a complete absence of an appropriate record, precludes meaningful review of this issue by this court.

For the foregoing reasons the defendant's petition for certiorari is denied, and the writ previously issued is hereby quashed. The judgment is affirmed. The papers in this case may be remanded to the Administrative Adjudication Court.

FLANDERS and LEDERBERG, Justices, concurring.

Although we agree with the result and with most of the reasoning expressed in Justice Goldberg's opinion for the court in this

case, we respectfully disagree in regard to the collateral estoppel issue. On that one point we agree with Chief Justice Weisberger's dissent except for one important consideration: the prosecution's burden of proof in a District Court criminal prosecution for establishing compliance with G.L. 1956 § 31–27–3.

Section 31–27–3 expressly provides that "at the trial of the person [charged with operating a motor vehicle while under the influence of narcotic drugs or intoxicating liquor] the prosecution must prove that he or she was so informed [that is, told 'immediately after the person's arrest' of the person's right to be examined by a physician of his or her own choosing] and was afforded that opportunity." Given this unusual statutory language, we conclude that the General Assembly intended for the prosecution to prove compliance with this statute as an element of its driving-under-the-influence case and that, therefore, it has to establish compliance therewith by proof beyond a reasonable doubt.

Accordingly, when the District Court found that "the state failed to establish its compliance with section 31–27–3 of the Rhode Island General Laws for the purposes of this trial," it was applying a standard of proof (beyond a reasonable doubt) that is higher than the civil standard (clear and convincing evidence) used in administrative violation hearings in cases of alleged breathalyzer refusals. See G.L.1956 § 31–43–3 ("no charge may be established except by clear and convincing evidence").

Because of the higher standard of proof used in criminal prosecutions for driving-under-the-influence charges, a District Court finding that compliance with § 31–27–3 has not been established cannot be used to preclude the state from later proceeding administratively against the same defendant on breathalyzer-refusal charges before the Administrative Adjudication Court. See Restatement (Second) of Judgments § 28(4), at 273 (1982) (relitigation of an issue is not barred in a subsequent action between the same parties if "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action").

We also do not believe that State v. Langella, 650 A.2d 478 (R.I.1994), should be construed to hold that compliance with the requirements of § 31–27–3 is always a question to be decided by the trial justice rather than by the jury. The court's brief per curiam opinion in Langella does not indicate whether the state's compliance with § 31–27–3 was a genuine issue of material fact in that case. However, when the evidence shows that a genuine factual conflict exists about whether the state has complied with the provisions of § 31–27–3, the issue should be submitted to the jury. See State v. Poole, 97 R.I. 215, 219, 197 A.2d 163, 165 (1964).

For these reasons, we concur with Justice Goldberg's opinion in this case.

WEISBERGER, Chief Justice, dissenting.

I am in general agreement with the analysis set forth in the majority opinion, but I must respectfully dissent on the issue of the applicability of collateral estoppel.

The doctrine of collateral estoppel was first imposed upon the states as a constitutional mandate in the case of Ashe v. Swenson, 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469, 476 (1970). In that case the Court held that the acquittal of the defendant of the crime of robbery in respect to one of a multiple number of victims precluded retrying the defendant for robbery of another victim. Id. In so doing, the Court overruled the earlier case Hoag v. New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958). Hoag was overruled because of the intervening case of Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969), which for the first time had made the Fifth Amendment ban on double jeopardy applicable to the states.

In commenting upon the doctrine of collateral estoppel, the Court used the following language:

"'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been deter-

mined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law at least since this Court's decision more than 50 years ago in *United States v. Oppenheimer*, 242 U.S. 85 [37 S.Ct. 68, 61 L.Ed. 161 (1916)]. As Mr. Justice Holmes put the matter in that case, 'It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt.' 242 U.S. at 87 [37 S.Ct. 68]. As a rule of federal law, therefore, '[i]t is much too late to suggest that this principle is not fully applicable to a former judgment in a criminal case, either because of lack of 'mutuality' or because the judgment may reflect only a belief that the Government had not met the higher burden of proof exacted in such cases for the Government's evidence as a whole although not necessarily as to every link in the chain.' *United States v. Kramer*, 289 F.2d 909, 913." *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194, 25 L.Ed.2d at 475.

It is thus apparent that the doctrine of collateral estoppel is a subdoctrine of double jeopardy but would apply in both civil and criminal cases. When a court of competent jurisdiction has decided an issue of ultimate fact, that fact may not be relitigated between the same parties. In the case at bar the proceedings in the Administrative Adjudication Court are civil rather than criminal. Nevertheless collateral estoppel would prevent the retrying of a factual issue as long as the burden of proof between the parties was the same.

We have never determined the burden of proof to be applied in respect to the state's satisfying the requirement of G.L. 1956 § 31–27–3, which the majority has described as a condition precedent to presenting substantive evidence of intoxication, or refusal of a breathalyzer test.

Nevertheless, we have recently decided in *State v. Langella*, 650 A.2d 478, 479 (R.I. 1994), that the question of determining whether the requirements of § 31–27–3 have

been met (whether appropriate admonitions were given concerning the right to be examined at his or her own expense by a physician selected by him or her and the affording of a reasonable opportunity to exercise the right) was properly decided by the trial justice. We further determined that when the trial justice had decided this issue, there was no requirement that the issue should then be submitted to the jury. 650 A.2d at 479.

Consequently the determination of compliance with this condition precedent bears a strong analogy to the determination of the voluntariness of a confession prior to allowing such confession to be admitted into evidence. We have held in *State v. Killay*, 430 A.2d 418 (R.I.1981), that the burden of proof in respect to this determination of voluntariness is by clear and convincing evidence, *id.* at 421, even though we noted that the burden of proof in the federal courts is by a fair preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 627, 30 L.Ed.2d 618, 627 (1972).

Therefore, I am of the opinion that the burden of proof that the requirements of § 31–27–3 have been met should be by clear and convincing evidence. This happens to be the same burden that is applicable to all issues in the civil proceedings for breathalyzer refusal and other violations at the Administrative Adjudication Court. *See* G.L. 1956 § 31–43–3.

Prior to the trial of the case at bar a District Court judge had before him a charge that the motorist in this case had driven under the influence of alcohol in violation of § 31–27–2. In precisely the same factual circumstances the judge specifically found as a fact that the requirements of § 31–27–3 had not been met. On that ground alone he granted a judgment of acquittal on behalf of defendant, Luis Pineda.

The majority suggests that this determination is of no force or effect since (1) there is no transcript of the proceedings in the District Court and (2) the judge made his deter-

mination pursuant to a motion for judgment of acquittal that we have held to be a legal nullity in jury-waived cases. *See State v. McKone,* 673 A.2d 1068, 1072 (R.I.1996). Although I agree with the majority that a judge should not entertain a motion for judgment of acquittal in a jury-waived case pursuant to our holding in *McKone,* the acquittal of a defendant by a court of competent jurisdiction, even if the procedure were erroneous, is still binding for double-jeopardy and collateral-estoppel purposes. *See Sanabria v. United States,* 437 U.S. 54, 69, 98 S.Ct. 2170, 2181, 57 L.Ed.2d 43, 57 (1978) (holding that no matter how egregious the error an acquittal bars retrial for the same offense).

There is no question that the District Court had subject-matter jurisdiction over the charge of driving while under the influence; it is also beyond question that in such a case compliance with the requirements of § 31–27–3 was a condition precedent to the introduction of substantive evidence of intoxication. The District Court judge's finding is certainly not vitiated or invalidated by the lack of a transcript of the trial proceedings. In the ordinary course stenographers are not utilized in the District Court, and therefore, such a record will seldom be available.

Nevertheless, the judgment is valid and binding. In this case the trial judge memorialized his decision by a specific written finding that he had acquitted defendant because of the violation of § 31–27–3. This finding clearly set forth the judge's factual determination even though he reached it by a route other than that approved in *McKone;* I believe it is completely valid and effective for purposes of collateral estoppel.

Since a court of competent jurisdiction had determined this factual issue, I believe that the Administrative Adjudication Court was not free to redetermine the same factual issue between the same parties.

For that reason I would reverse the decision of the Appeals Panel of the Administrative Adjudication Court and remand the case to that court with directions to enter a judgment of dismissal of the charge of breathalyzer refusal.