STATE

v.

William MILLIKEN.

No. 99–90–C.A.

Supreme Court of Rhode Island.

Aug. 2, 2000.

Aaron L. Weisman, Providence, for plaintiff.

Paula Hardiman Lynch, Providence, Paula Rosin, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court in Washington County on the appeal of the defendant, William Milliken (defendant or Milliken), from judgments of conviction following a jury trial in Providence County Superior Court for two felony counts of assault on a person over sixty years of age, in violation of G.L.1956 § 11–5–10, and second-degree robbery in violation of G.L. 1956 § 11–39–1(b).[1] The defendant was sentenced to a term of ten years at the Adult Correctional Institutions, five years to serve and five years suspended on the count of assault, and to a concurrent term of five years to serve for second-degree robbery. Both parties were directed to appear and show cause why the issues raised by this appeal should not be summarily decided. No cause was shown, and we shall decide this appeal at this time.

Before this Court, defendant contended that the trial justice erred when he restricted defense counsel's direct examination of defendant and cross-examination of the complaining witness and by refusing to admit the testimony of a defense witness offered to establish motive and bias on the part of the complaining witness. Also, defendant argued that the trial justice erred by permitting the state to delve into his purported use of drugs and alcohol and possession of sexual paraphernalia, resulting in prejudice against defendant. For the reasons stated below, we deny the appeal and affirm the judgments of conviction.

### Facts and Travel

On the afternoon of October 13, 1997, Patrolman Daniel J. McCarthy (Patrolman McCarthy), of the Providence Police Department, having been alerted to a report of an assault, responded to 94 Winthrop Avenue in Providence, the home of defendant's elderly mother, Territa Conde (Conde).[2] Patrolman McCarthy testified that when he arrived, Conde appeared nervous and afraid. She told him that her son had just assaulted her, that he had stolen fifty dollars from her, and that he had taken her car. Patrolman McCarthy testified further that he observed that a strongbox had been smashed, papers had been destroyed, and Conde's wallet had been torn apart and the contents removed.

Conde testified that earlier that afternoon, defendant had arrived at her home very upset, and when she asked her son what was bothering him, he responded that he needed fifty dollars because his dog was sick. Conde testified that she told defendant she could not give him fifty

---

1. A third count, larceny under $500, in violation of G.L.1956 §§ 11–41–1 and 11–41–5 also was charged but was dismissed at the close of the evidence.

2. Conde was eighty-three years old at the time of the incident. We learned at oral argument that she since has died.

dollars, but that she would give him five dollars.[3] Conde said that defendant became very angry, grabbed her by the back of the head and threw her down onto the kitchen floor. Then, according to Conde, defendant proceeded to drag her across the kitchen floor into her bedroom, where he repeatedly kicked her in her side. Conde testified that after pulling her up off the floor, defendant retrieved Conde's strongbox and proceeded to kick and stomp it open. However, according to Conde, defendant's efforts proved fruitless because there was no money in the box. Frustrated, defendant tore up the contents of the box, which included papers that Conde considered important to her, including her living will. Conde testified that defendant eventually discovered her billfold and helped himself to fifty dollars. Finally, Conde testified that when he was leaving, defendant threatened to kill her if she contacted the police.

The defendant also testified about the events that transpired on October 13, and although his testimony was consistent with his mother's in certain respects, defendant denied assaulting his mother and denied dragging her across the floor. Further, defendant testified that he took the money from an envelope reserved for his mother's phone bill with her permission, and that he did not take money from her wallet. On September 30, 1998, following a two-day trial, the jury returned a verdict of guilty on both counts. The defendant undertook a timely appeal. Additional facts will be supplied as they are necessary to the issues raised in this appeal.

**3.** Conde testified that defendant suffered from a lifelong seizure disorder known as "petite mal," and, as result, received SSI payments. Conde testified that when defendant turned twenty-one, she received power of attorney from him, permitting her to cash his checks, and therefore it was not unusual for her to provide him with money when needed.

**4.** On cross-examination, defense counsel inquired into an alleged threat made by Conde to her son. Specifically, the threat entailed

## Discussion

Before this Court, defendant argued that the trial justice erred by not permitting cross-examination of Conde about her possible bias or motive toward defendant,[4] by not allowing defendant to testify about possible bias or motive on the part of his mother,[5] and by refusing to admit the testimony of Nancy Butterworth (Butterworth), a former girlfriend of defendant. The defendant asserted that Butterworth was prepared to testify that defendant's mother was biased against him and had made threats toward him to "get him" and "fix him," and that she specifically left messages to that effect on defendant's telephone answering machine. The trial justice disallowed the testimony of Butterworth, finding the question of whether Milliken was in fear of his mother was irrelevant because fear was not a defense to the charges and further, that defendant had testified that he was not afraid of his mother. The defendant argued that the testimony of Butterworth was important to demonstrate Conde's bias toward her son and, therefore, the likelihood that she would fabricate a story to implicate him in the commission of a criminal act.

Recently, in *State v. Oliveira*, 730 A.2d 20 (R.I.1999), we had occasion to pass upon a trial justice's discretion in affording defense counsel a reasonable opportunity to explore and establish any possible bias or ulterior motive on the part of the witnesses against him. *Id.* at 24. In recognizing that a trial justice is vested with wide discretion to permit or limit counsel's cross-examination of witnesses during trial, and that a ruling will not be disturbed

Conde's knowledge about the court system and a charge of abusing the elderly. The state objected on the grounds of relevance, and the trial justice sustained the objection.

**5.** The defendant testified on direct examination that his mother warned him that she would do to him what she did to his father, who purportedly committed suicide. The state objected, and the objection was sustained.

on appeal absent a showing of a clear abuse of discretion amounting to prejudicial error, we held that the trial justice abused his discretion by not affording Oliveira "a minimum threshold of inquiry as to the witness's probable motive for his [or her] testimony," and concluded that Oliveira was unduly prejudiced by that ruling. *Id.*

 In light of *Oliveira*, we are satisfied that the trial justice erred in not allowing defense counsel to inquire into Conde's possible bias or motive and by precluding the testimony of defendant's witness that was offered to establish bias or motive on the part of the complaining witness. A request by the state to limit or exclude the presentation of defense witnesses in a criminal trial should be received with caution and carefully reviewed by the trial justice, who, although exercising his or her broad discretion to determine its relevance, is faced with the potential for prejudicial error to the defendant. Here, the state acknowledged this error but argued that it was harmless in light of defendant's trial testimony. We agree, and are satisfied that by precluding defendant from presenting this evidence, the trial justice erred, however, we are of the opinion that the error was harmless.[6]

At trial, defendant testified that he went to his mother's house to get fifty dollars to pay for treatment for his ill dog. However, when his mother offered him only five dollars, he became "infuriated" because it was "like a slap in the mouth." Thereafter, defendant asked his mother to open the strongbox, where he thought she stored cash. When his mother refused to open it, he ordered her to "[g]et the key or I'll put a screwdriver to it." According to defendant, Conde then opened the strongbox, which proved to be empty. The defendant testified that, "I was infuriated because the box was empty. I threw the box on the floor off the bed on the floor on the side of the bed and I stomped it. I

said, 'That's what I think about your' * * * 'f . . . ing box' and I stomped it out. I stomped the box out."

The defendant testified that afterward, while eating a sandwich that his mother had made for him, he noticed an envelope full of money earmarked for a bill payment. The defendant further testified that the following exchange took place between him and Conde:

> " '[W]e can juggle the books. I need $50.' So, she says, 'You can't have it.' I said, 'But Ma my dog is sick. I really need—I really need $50 for my dog.' She said, 'I don't have it.' But I said, well, I says, 'Look we got money here. We can juggle the books.' So, I took two twenties and a ten. She turned to me and she said to me, 'You're stealing.' And I said to her, 'I'm not stealing from you. I don't have to steal from you. *The only way I'm leaving this house is two ways. Either you are giving it to me or you're loaning it to me.*' " (Emphasis added.)

The defendant testified that at that point his mother became upset and accused him of stealing, to which he again replied: "I don't have to steal from you." The defendant testified, his mother finally told him to take the money and get out, to which he replied: " 'You're going to call the police on me, aren't you?' "

In light of this testimony, in which defendant admitted to destroying the box and taking money from his mother without her permission, and the factual record in this case, we are satisfied that although the trial justice erred in disallowing cross-examination of a witness pertaining to that witness's possible bias or motive and in precluding the testimony of a defense witness, where such witness was prepared to testify about possible bias or motive of the complaining witness, the error was harmless beyond a reasonable doubt. *See, e.g.,*

---

6. At the very least, we note that the trial justice should have conducted a voir dire of the defense witness before disallowing her testimony.

*Oliveira,* 730 A.2d at 23. We note that defendant's testimony was an admission to the tantrum and ultimately an admission to the theft of the money. The defendant asserted that his mother gave him permission to take the money. However, we are satisfied that the jury could have been persuaded that the ultimatum given to his mother that, "[t]he only way I'm leaving this house is two ways * * * [e]ither you are giving it to me or you're loaning it to me," left her with no choice in the matter, and is tantamount to theft. Further, we note that the testimony of Patrolman McCarthy about the bruises and about the destruction of the strongbox, the papers, and the wallet, corroborated Conde's testimony and portions of defendant's testimony. Although defendant was precluded from presenting evidence of bias or motive, which should have been introduced, we are satisfied nonetheless, given the existence of such overwhelming inculpatory evidence, particularly defendant's admissions, that the error was harmless beyond a reasonable doubt.

■ Also, defendant argued on appeal that the trial justice committed reversible error by permitting the state to inquire into defendant's alleged drug and alcohol use and alleged possession of sexual paraphernalia [7] that unfairly prejudiced defendant. However, we are of the opinion that this issue has not been adequately preserved for our review. At trial, the state cross-examined defendant about why he needed the money and challenged his assertion that it was to treat his ill dog. Specifically, the state questioned defendant about his purported use of drugs and alcohol and about drug paraphernalia allegedly discovered in the room he used in his mother's apartment.

■ This Court continuously has held that the admission or exclusion of evidence on the grounds of relevance is a decision left to the sound discretion of the trial justice. *State v. Robertson,* 740 A.2d 330,

335 (R.I.1999) (citing *State v. Gabriau,* 696 A.2d 290, 294 (R.I.1997)). Also, "[i]t is well settled that this [C]ourt will not review issues that were not preserved for appeal by a specific objection at trial." *Africano v. Castelli,* 740 A.2d 1251, 1253 (R.I.1999) (quoting *State v. Pineda,* 712 A.2d 858, 861 (R.I.1998)). Further, "[a]llegations of error committed at trial are considered waived if they were not effectively raised at trial, despite their articulation at the appellate level." *Id.* (quoting *State v. Toole,* 640 A.2d 965, 973 (R.I. 1994)).

We are satisfied that the defendant had an adequate opportunity at trial to make an appropriate objection to an inquiry into whether he used drugs and alcohol. We note that the state posed eight questions to the defendant about his potential use of drugs and alcohol before defense counsel interposed an objection to this line of questioning, and that the objection, when finally made, was not proper. The defense counsel stated: "Judge, I'm going to object. If the [p]rosecutor seeks to introduce evidence, she may need a witness other than [defendant] in which to do that. There's no foundation. There's no offer of proof." On appeal, the defendant contended that this line of inquiry unfairly prejudiced him in the eyes of the jury. However at trial, he argued that there was inadequate foundation. Therefore, because the defendant did not effectively raise the issue at trial, he has waived his right to raise it at the appellate level.

### Conclusion

Accordingly, for the foregoing reasons the defendant's appeal is denied and the judgments of conviction are affirmed. The papers in this case are remanded to the Superior Court.

---

7. We note that the "sexual items" defendant mentioned in his brief refers to a marijuana "roach" clip purportedly discovered in his bedroom, depicting a man and a woman having sex.